NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                              :
MARK EDWARDS, JR.,            :
                              :   Civil Action No. 13-3153 (RMB)
          Petitioner,         :
                              :
     v.                       :           OPINION
                              :
JORDAN HOLLINGSWORTH, et al., :
                              :
          Respondents.        :
_____:
```

**BUMB, District Judge:**

    This matter, being commenced as a § 2241 habeas proceeding, raised the issues that, while legally straightforward, have been mired by Petitioner's confusing allegations.  Petitioner's allegations conflate three wholly distinct and different habeas claims: (a) a § 2241 claim implicating the so-called <u>Willis</u> credit; (b) a § 2241 claim implicating the so-called <u>Barden</u> designation; and (c) a <u>de facto</u> § 2255 claim seeking downward departure of Petitioner's federal sentence.  For the reasons detailed below, Petitioner's <u>Willis</u> claim will be dismissed as meritless.  Petitioner's <u>Barden</u> claim will be severed into a new and separate § 2241 habeas matter and dismissed for failure to show a violation of his federal rights.  Finally, the claim seeking a downward departure of his federal sentence will be dismissed for lack of jurisdiction.  No new and separate matter

will be commenced in connection with this last claim, since such measure is not in the interests of justice.

## I. BACKGROUND

Petitioner has an extensive criminal history. Prior to his state and federal offenses detailed below, he had also committed and been convicted of numerous other offenses such as "aggravated robbery with a deadly weapon, distribution of methamphetamine, aiding and abetting [a criminal conduct], assault on a federal officer with a dangerous weapon, . . . resisting arrest," etc. Docket Entry No. 8, at 2 (capitalization removed).

After the foregoing, on July 16, 2000, he was arrested in Tennessee on new state charges, such as aggravated assault, possession of cocaine, etc. Moreover, at the time of his Tennessee arrest, he was already under an investigation by the federal authorities of the Virginia vicinage of the Drug Enforcement Administration. Ten days after his Tennessee arrest, that federal investigation concluded, and the Government filed a criminal complaint against him in the United States District Court for the Western District of Virginia ("W.D. Va.").[1]

---

[1] Petitioner's federal criminal complaint filed with the W.D. Va. charged him with nineteen various counts of violations. In addition to Petitioner (who proceeded as Mark Edwards, Jr.), other individuals, i.e., Mark Edwards, Sr., Donald Allen Edwards, Antoine Washington, Latisha Smith, Amy Childress and Marlon Craig Heath were named as defendants. See USA v. Edwards, Crim. Action No. 00-0087 (JPJ) (W.D. Va.), Docket Entry No. 1.

In light of that federal prosecution, the W.D. Va.: (a) lodged a detainer against him with the Tennessee officials; and (b) eventually directed Petitioner's production in federal forum under a writ of habeas corpus <u>ad</u> <u>prosequendum</u> ("WHCAP") for the purposes of his federal arraignment.  After that arraignment took place, and the WHCAP expired, Petitioner was returned to Tennessee custody and remained there until his next federal WHCAP was issued, this time for the purposes of his federal trial.  After he was found guilty of various offenses (such as conspiracy and distribution of crack cocaine), various firearm offenses and other offenses, the W.D. Va. sentenced him to a 308-month term, which was later reduced to 241 months.  Nothing in his federal judgment of conviction indicated the sentencing court's intention to impose a concurrent term.

After Petitioner's W.D. Va. sentencing, his second federal WHCAP expired, and he was returned to Tennessee custody for the purposes of his state prosecution.  On September 14, 2001, he was sentenced to a 72-month state term.  The state court ordered it to run concurrently to Petitioner's W.D. Va. term.

Since Petitioner was first arrested by Tennessee, he proceeded to serve his state term, which expired on August 8, 2003.  On that date, Petitioner was placed into federal custody for the purposes of serving his W.D. Va. sentence.  At that point, the Bureau of Prisons ("BOP") calculated Petitioner's W.D.

Va. term as commencing on August 8, 2003, and awarded him prior custody credit for July 16, 2000 (the date of his initial arrest) and July 17, 2000, since his Tennessee state term was credited with jail credits only starting from July 18, 2000.

Petitioner then sought a Bargen designation, which the BOP denied.  That initial denial factored, inter alia, an error contained in Petitioner's pre-sentence investigation report ("PSIR"), which indicated that his Tennessee sentence was imposed on July 18, 2000, i.e., prior – rather than after – his W.D. Va. sentence.  Petitioner then filed the Petition at bar, asserting that: (a) he should have been granted what he defined as "Willis credit" on the grounds that a federal detainer was lodged against him while he was held in Tennessee custody; and (b) such "Willis credit" should have been equal to the entire period of his Tennessee sentence; or, in alternative (c) his federal term should be downwardly adjusted by the amount of his Tennessee term.  In sum, Petitioner raised two different claims substantively arguing the same point, i.e., that his Tennessee term should have been used to offset his W.D. Va. term.

Addressing this panoply of challenges, the BOP reviewed Petitioner's record and detected the above-mentioned error in his PSIR.  Upon realizing that its prior Barden analysis was compounded by that PSIR error, the BOP conducted its Barden analysis anew, and concluded that no Barden designation was

4

warranted. That second Barden determination was reached already after Respondents filed their answer in the instant matter (noting, in passim, that the new Barden analysis was underway). See Docket Entries Nos. 7 and 8. Shortly after filing its answer, Respondents supplemented the docket by notifying this Court that the BOP denied Petitioner's second Barden review. Petitioner traversed to Respondents' answer and supplement, re-raising his "Willis credit" claims and now litigating the outcome of the BOP's second Barden finding. See Docket Entry No. 9. Essentially, his traverse alleged that: (a) the BOP violated his rights by concluding that no Barden designation was warranted; and (b) Petitioner's initial reference to Willis was meant to implicate Willis not directly but "by analogy." See id.

## II. CONFLATION OF CLAIMS

No habeas petitioner can challenge different determinations, regardless of whether they were judicial or administrative, in a single action. "Habeas Rules do not envision . . . a lump-sum challenge to the circumstances which a litigant might find [himself] in. Rather, [under] Habeas Rule 2(e), [every] petitioner is obligated to submit a separate habeas application challenging each particular determination . . . . Therefore, [the] petitioner shall select, for the purposes of each . . . habeas action, [a] particular [administrative or judicial] determination . . . he wishes to challenge, and then file an

5

individual petition with regard to each specific challenge." Alou v. Holder, 2010 U.S. Dist. LEXIS 113717, at *2-3 (D.N.J. Oct. 22, 2010) (citing 28 U.S.C. § 2254 Rule 2(e), applicable to §§ 2241 and 2255 petitions through Habeas Rule 1(b)) (capitalization removed); see also Muniz v. Zickefoose, 2011 U.S. Dist. LEXIS 115766, at *13 (D.N.J. Sept. 30, 2011) (noting the same as "axiomatic"), aff'd, 460 F. App'x 165 (3d Cir. 2012).  It follows that, where a litigant raises different habeas challenges in a single action, the court either dismisses his claims for failure to comply with Habeas Rule 2(e) or severs each line of challenges into its own, new and separate, habeas matter in order to address its procedural or substantive properties.  See Izac v. Norwood, 2010 U.S. Dist. LEXIS 129520 (D.N.J. Dec. 7, 2010).

### III. CALCULATION OF SENTENCE

    **A.**    **Governing Legal Principles**

"The authority to calculate a federal prisoner's release date for the sentence imposed, and to provide credit for pre-sentence detention and good conduct, is delegated to the Attorney General, who acts through the [BOP]." Armstrong v. Grondolsky, 341 F. App'x 828, 830 (3d Cir. 2009) (citing United States v. Wilson, 503 U.S. 329, 334-35 (1992)).  "In calculating the sentence, the BOP determines[:] (1) when the federal sentence commenced, and (2) whether there are any [de jure or de facto] credits to which the prisoner may be entitled." Nieves v. Scism,

2013 U.S. App. LEXIS 10989, *3 (3d Cir. 2013) (citing 18 U.S.C. § 3585). Technically, a sentence commences on the date when a defendant "is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a); see also Howard v. Longley, 2013 U.S. App. LEXIS 17905, at *4 (3d Cir. Aug. 27, 2013) ("a sentence cannot [technically] start earlier than the day it was imposed . . . 'even if made concurrent with a sentence already being served'") (quoting United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980)). It follows that a federal sentence does not begin to run when a defendant is placed in federal custody under a WHCAP, see generally, Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002), since primary jurisdiction remains vested in the state if it is the sovereign arrested the defendant first. In fact, primary jurisdiction remains with the state until it relinquishes its priority, which the state can do *only* by one of four ways: (a) bail release; (b) dismissal of all charges; (c) parole release; or (d) expiration of sentence. See Rios v. Wiley, 201 F.3d 257, 274 (3d Cir. 2000), superseded on other grounds, as stated in, United States v. Saintville, 218 F.3d. 246, 248-49 (3d Cir. 2000); Davis v. Sniezek, 403 F. App'x 738, 740 (3d Cir. 2010) (same, relying on United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005)); see also Chambers v. Holland, 920 F. Supp. 618,

622 (M.D. Pa.) ("Primary jurisdiction over a state prisoner ends and federal custody over him commences only when the state authorities relinquish him on satisfaction or extinguishment of [his] state obligation[s]"), aff'd, 100 F.3d 946 (3d Cir. 1996); accord Carmona v. Williamson, No. 05-0022, 2006 U.S. Dist. LEXIS 77201 (M.D. Pa. Oct. 23, 2006) (since the state holds primary jurisdiction over the defendant, the federal officials assume secondary jurisdiction while he is serving his state sentence).

Once the state's primary jurisdiction is relinquished, federal jurisdiction transforms from secondary to primary. See Chambers, 920 F. Supp. at 622. If, at that juncture, an inmate enters the BOP custody, the BOP calculates his projected release date by factoring in the specifics of his federal sentence and all appropriate credits. See Armstrong, 341 F. App'x at 830. The key point of this calculative process is the well-settled legal principle that a federal prisoner cannot receive a so-called "double credit," i.e., a credit for the time already credited against his state sentence. See Wilson, 503 U.S. at 337 (in enacting § 3585(b), "Congress made clear that a defendant could not receive a double credit for his detention time"). However, a federal prisoner is entitled to a so-called "prior custody credit" for the time he spent in detention before his federal sentence technically began if this period has not already been credited against his other sentence. See 18 U.S.C. §

8

3585(b) (a "prior custody credit" is proper in the event that detention resulted either from the offense for which the sentence was imposed or from "any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed [if that period] has not been credited against any other sentence").

The § 3585(b) rule detailed in Wilson is, arguably subject to two narrow exceptions. See Rios, 201 F.3d at 272 n.13 (reflecting on Kayfez v. Gasele, 993 F.2d 1288 (7th Cir. 1993), and Willis v. United States, 438 F.2d 923 (5th Cir. 1971)). However, both Kayfez and Willis require that an inmate's state and federal sentences were ordered concurrent by *both* state and federal courts.[1]

---

[1] In Willis, while being free on bail with regard to his federal charges, the petitioner was arrested by state authorities, and that state arrest caused revocation of his federal bail and filing of a federal detainer against him. That federal detainer was, in turn, the sole basis for denial of Petitioner's release on bail for the purposes of his state charges. The state court tried to give the petitioner credit for the brief period when he was denied bail on his state charges. However, this did not help the petitioner since his federal term was due to expire long after his state terms. Correspondingly, he claimed that he was entitled to the same credit against his federal sentence, i.e., the credit for the brief period when he was denied bail on his state charges. The Fifth Circuit agreed finding that, if petitioner was in fact denied release on bail solely because his federal detainer, then the time he spent in custody in connection with that detainer was the time that had to be factored into his federal term under 18 U.S.C.S. § 3568. See Elwell v. Fisher, 716 F.3d 477, 485 (8th Cir. 2013) ("[T]he theory of Willis [was that,] when a federal detainer was in place, a defendant could receive credit for time in custody associated with the federal proceedings (seemingly regardless of

In addition to granting prior custody credits, as well as Willis credits and Kayfez credits, the BOP may take an administrative action creating a credit-like effect. See, e.g., Barden v. Keohane, 921 F.2d 476, 483 (3d Cir. 1990).

The Barden analysis could be summarized this way:

> Under Section 3621(b), the BOP has discretion – i.e., the BOP *may but not must* – designate, [either prospectively] or nunc pro tunc, a state facility where a prisoner [is serving or] served his state sentence as a facility where the prisoner [is or] was serving his federal sentence. . . . The BOP may exercise such discretion only if the state court clearly indicated its intention to have the prisoner's state sentence run concurrently with the prisoner's already imposed federal sentence. Once the BOP determines such clear intent on behalf of the state court, the BOP: (1) is obligated to exercise its discretion by considering the prisoner's application in light of the factors stated in § 3621(b); but (2) is *not* obligated to grant the prisoner's request if, upon considering the prisoner's application in light of the factors stated in § 3621(b), the BOP concludes, in good faith, that such nunc pro tunc designation is not warranted.

Galloway v. Warden of F.C.I., 2009 U.S. Dist. LEXIS 9293, at *10-11 (D.N.J. Feb. 9, 2009) (emphasis supplied), aff'd, 385 F. App'x 59 (3d Cir. 2010) (where the BOP effectively frustrated the express wishes of the state judge who wrote, "It is difficult to comprehend [why the petitioner's] sentence, against [my] clear

---

primary jurisdiction) unless the government met the burden of proving that the defendant would have remained in state custody even in the absence of the federal detainer"). Willis credit cannot exceed the "time spent in *presentence* state custody up to the date of the state sentence." Zwick v. Holt, 2011 U.S. Dist. LEXIS 142381, at *9 (M.D. Pa. Dec. 12, 2011) (emphasis in original).

direction, should not run concurrent with [his f]ederal sentence," the BOP did not abuse its discretion in denying a Barden designation, since the agency did not abdicate its responsibility to independently decide the issue. A habeas review does not turn on what is "difficult to comprehend": it is "limited to whether the BOP abused its discretion").

In addition, a prisoner's *federal* term could be reduced as a result of a downward departure granted by his *sentencing federal* court; with regard to that decision, the BOP has no authority but to execute it faithfully. Accord Setser v. United States, 132 S. Ct. 1463, 1470 (2012) ("3621(b) . . . does not confer [upon the BOP] authority to choose between concurrent and consecutive sentences").[2]

That being said, if the federal court does not address the issue of concurrence expressly, the BOP is *obligated* to presume an implied consecutiveness, not concurrence, of the federal term. See 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed

---

[2] For instance, if the federal court directs a prisoner's federal term to run in prospective concurrence to his undischarged (either already running or yet-to-be imposed) state sentence, or if the federal court orders retroactive concurrence to an already-running state term, the BOP can neither second-guess nor alter that judgment. See 18 U.S.C. § 3584(a) (expressly allowing prospective concurrence to an undischarged, already-running state term); accord Setser v. United States, 132 S. Ct. 1463 (distilling the power of federal courts to order prospective concurrence to a yet-to-be-imposed state term); see also Ruggiano, 307 F.3d 121 (articulating the power of federal courts to order retroactive concurrence to an undischarged, already-imposed state sentence).

at different times run consecutively *unless the court orders* that the terms are to run concurrently") (emphasis supplied).

### B. Petitioner's *Willis* Claim Is Without Merit

Here, the Petition asserted that the BOP failed to grant him Willis credit, and Petitioner's traverse – seemingly prompted by Respondents' answer pointing out that Willis was inapposite to Petitioner's circumstances – alleged that Petitioner meant to invoke Willis not directly but "by analogy."

The best this Court can surmise, Petitioner posed the following five-step hypothesis: (a) first, he alleged his belief that, had the Government not lodged a federal detainer in Tennessee, the state court might have released him on bail on his Tennessee charges; (b) if so, Tennessee's primary jurisdiction over Petitioner would be relinquished upon that bail; (c) had the United States arrested Petitioner *after* his release on state bail but *prior* to the point in time when that bail had to be revoked (for the purposes of his state prosecution, sentencing and state prison term) and, in addition, had the W.D. Va. denied Petitioner release on federal bail, primary jurisdiction over Petitioner would have vested and remained with the federal authorities, while Tennessee's jurisdiction would become and remain secondary; (d) if so, Petitioner would have to serve his federal sentence prior to returning to Tennessee for the purposes of serving his state term; and (e) if so, his state judge's order (directing his

12

state sentence to run concurrent to his federal term) would have a practical effect. See generally, Docket Entries Nos. 1 and 9. Since: (a) the first step in Petitioner's five-step hypothesis derived from the fact that the W.D. Va. lodged a federal detainer against him; and (b) the Willis decision addressed a scenario where a federal detainer affected the calculation of an inmate's federal term, Petitioner invited this Court to apply Willis "by analogy" and to expand Willis so it would: (a) apply to the prison terms that are not concurrent on both federal and state sides; and (b) cover not only the brief presentencing period but the entire period of an inmate's state prison term. See id.

>This Court declines to adapt Petitioner's approach. First, Petitioner's exponential layers of self-serving speculations and hypotheticals cannot support *any* claim. Accord Salyer Land Co. v. Tulare Lake Basin Water Storage Dist., 410 U.S. 719, 731 (1973) (legal "adjudication cannot rest on any such 'house that Jack built' foundation"). Here, Petitioner offered this Court nothing but his speculation that Tennessee would have released him on bail had it not been for his federal detainer.[3]

---

[3] Petitioner's federal detainer was issued ten days after Petitioner's Tennessee arrest and entered in the record eleven days after that arrest, i.e., long after the point in time when he had to be availed to a bail hearing on his state charges. If Petitioner had his Tennessee bail prior to the date of entry of the detainer, the detainer could not have been a basis of that decision. Moreover, even if Petitioner's Tennessee bail hearing

In addition, even if this Court were to presume, <u>arguendo</u>, that <u>Willis</u> is still good law, nothing in <u>Willis</u> permits the enlargement Petitioner argues for: the Fifth Circuit's ruling covered only the presentencing period, not the prison term.[4]

Finally, and paramount here, the record is unambiguous that Petitioner's term imposed by the W.D. Va. was wholly silent as to any concurrence (which, under § 3584(a), necessarily implied consecutiveness) and, moreover, Petitioner's W.D. Va. judge expressly verified so in his latest communication to the BOP. <u>See</u> Docket Entry No. 8. Therefore, the core prerequisite of <u>Willis</u> is not satisfied in this matter, and both other elements of <u>Willis</u> are also not met. Thus, <u>Willis</u> is wholly inapposite here, either directly or by the baseless "analogy" Petitioner posed. Therefore, his <u>Willis</u> claim is without merit.

  **C. <u>Petitioner's *Barden* Claim Is Without Merit</u>**

As detailed <u>supra</u>, Respondents' answer to the Petition indicated that, after Petitioner filed his Petition at bar, the BOP conducted its <u>Barden</u> analysis anew. Reflecting on Section

---

took place after the detainer was entered, his extensive criminal record (accrued prior to his Tennessee arrest) suggests that his denial of bail in Tennessee was reached not *solely* on the grounds of his federal detainer.

[4] <u>Willis</u> is a narrow exception to the <u>Wilson</u> rule, and the value of it has been called into question under the provision upon which the Fifth Circuit relied, <u>i.e.</u>, § 3568 (which did *not* expressly preclude double credit) and, especially, under the superceding provision, § 3585, which expressly precluded double credit. <u>See</u> <u>Rios</u>, 201 F.3d at 273 n.14.

3621(b) factors, the BOP assessed, inter alia, Petitioner's W.D. Va. and Tennessee offenses, his prior offenses, the pertinent agency policy and the statement from Petitioner's W.D. Va. judge. With regard to this last factor, the BOP noted:

> The sentencing court was contacted to obtain [its] opinion regarding the granting of [Barden] designation on June 15, 2013. A response was received from the sentencing court on June 19, 2013. In [connection with the issue raised, the sentencing court] respond[ed] "I do not think a [Barden] designation would be appropriate in this case . . . ."

Docket Entry No. 8.

Thus, the BOP duly exercised its discretion and concluded that, under Section 3621(b) factors, no Barden designation was warranted. The BOP determination was issued on June 20, 2013, and sent to Petitioner. Although the record is silent as to the exact date when that determination reached Respondents' counsel, the docket shows that, by August 1, 2013, Respondents' counsel learned of the same and filed a supplement to the answer informing the Court of that agency finding.[5] See id.

This Court, sitting in habeas review, has no basis to find

---

[5] From the facts that: (a) Respondents' answer was filed on July 1, 2013, and asserted that the BOP was still in the process of re-analyzing Petitioner's Barden designation; while (b) the W.D. Va. responded to the BOP inquiry eleven days prior, i.e., on June 19, 2013, and the BOP reached its decision on June 20, 2013, i.e., ten days prior to Respondents' filing of their answer, Petitioner deduced that "Respondent[s'] counsel lied, fabricated, masterminded and created a scheme [under which the W.D. Va. came to be] of opinion not to recommend a nunc pro tunc designation to the Bureau of Prisons." Docket Entry No. 9, at 1-2.

15

an error in the BOP determination. Nothing in the record suggests that the BOP failed to exercise its independent discretion or abused its discretion. Therefore, Petitioner's Barden challenges will be dismissed for failure to show a violation of his federal rights.[6]

Had Petitioner's state court wished to ensure that its directive (as to concurrence of Petitioner's state and federal sentences) would be enforceable, it could have simply released him on bail or modified his Tennessee sentence.

## IV. CHALLENGES TO THE FEDERAL SENTENCE

28 U.S.C. §§ 2241 and 2255 confer jurisdiction over the petitions filed by federal inmates. Since "[t]he exact interplay between § 2241 and § 2255 is complicated, [and] an explication of that relationship is unnecessary for resolution of this

---

[6] Since Petitioner's Barden claim is attacking a finding made by the BOP in the midst of this litigation, this claim cannot be litigated in the instant matter, which challenged a wholly different BOP determination (responding to Petitioner's Willis claim). Thus, under Habeas Rule 2(e), the Court will sever Petitioner's Barden claim into a new and separate § 2241 action. Petitioner will be directed to submit his $5 filing fee or in forma pauperis application in that action. See Hairston v. Gronolsky, 348 F. App'x 716, at *5 (3d Cir. Oct. 15, 2009) (citing Hall v. Stone, 170 F.3d 706, 707 (7th Cir. 1999), for the observation that the prisoner's legal obligation to pay the filing fee or obtain in forma pauperis status is automatically incurred by the very act of raising a legal claim). Respondents will be directed to enter an appearance and supplement the record by filing the response received from the W.D. Va. Finally, while the Court notes its uncertainty as to whether Petitioner's Barden claim was duly exhausted, the Court finds it warranted to excuse Petitioner's failure to exhaust (if such failure was present).

[matter]," Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citing In re Dorsainvil, 119 F.3d 245, 249 (3d Cir. 1997)), it should be enough to state that "[m]otions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002).[7]

Here, Petitioner asserts that his W.D. Va. term should have been subject to a downward departure. However, neither the BOP nor this Court, sitting in § 2241 review, has the mandate to direct such departure.[8] Therefore, Respondents are correct that this claim is a mislabeled § 2255 challenge and should have been raised before the W.D. Va. by means of a timely § 2255 motion.

Here, Petitioner already filed a § 2255 motion and: (a) had it denied by the W.D. Va.; (b) had his motion for reconsideration denied by the W.D. Pa.; (c) had his appeal dismissed by the Fourth Circuit; and (d) had his petition for certiorari denied by

---

[7] An attack of one's sentence or conviction cannot be converted into a § 2241 claim by one's reference to his federal detainer, since a detainer is not a jurisdiction-supplying order. See, e.g., Bayard v. Hufford, 2011 U.S. Dist. LEXIS 153245, at *13 (M.D. Pa. Sept. 13, 2011); Ryan v. Dep't of Homeland Sec., 2010 U.S. Dist. LEXIS 34951, at *2-3 (N.D. Fla. Mar. 8, 2010).

[8] While the court sitting in § 2241 review has the power to *enforce* the downward departure directed by the federal sentencing court, see Setser, 132 S. Ct. 1463; Ruggiano, 307 F.3d 121, nothing in the record suggests that the W.D. Va. directed such departure.

the Supreme Court. See United States v. Edwards, 131 F. App'x 963 (4th Cir. 2005), cert. denied, 546 U.S. 923 (2005). Thus, it would not be in the interest of justice to commence a new § 2255 action for Petitioner and direct its transfer to the W.D. Va.[9]

In light of the foregoing, Petitioner's downward departure attack will be dismissed for lack of jurisdiction, without more.

**V.  CONCLUSION**

For the foregoing reasons, Petitioner's Willis claim will be dismissed as meritless. Petitioner's Barden claim will be severed into a new action and dismissed for failure to show a violation of Petitioner's federal rights. Respondents will be directed to enter an appearance in that new action and file the response received by the BOP from the W.D. Va. as to Petitioner's Barden designation. Petitioner will be directed to pay his filing fee in that new matter or obtain in forma pauperis status. Petitioner's mislabeled § 2255 downward-departure claim will be dismissed for lack of jurisdiction. The Clerk will be directed to amend the docket by correcting Petitioner's inmate number.[10]

---

[9] However, no statement in this Opinion or in the Order filed herewith prevents Petitioner from seeking Fourth Circuit's leave to file a second/successive § 2255 motion out of time. This Court, however, stresses that it expresses no opinion as to substantive or procedural validity or invalidity of such motion.

[10] The Petition indicated that Petitioner's inmate number was 06581-084. See Docket Entry No. 1, at 1. However, that inmate number belonged to another individual, Dennis Harold Reed, who was released on December 1, 2005. See http://www.bop.gov/inmateloc/. The Court's sua sponte review of the BOP's records online determined that Petitioner's inmate number was 06851-084.

An appropriate Order follows.

                                                  s/Renée Marie Bumb
                                                  **RENÉE MARIE BUMB**
                                                  **United States District Judge**

Dated: February 27, 2014

---

See id. It is, therefore, not surprising that all Clerk's mailings were returned as undeliverable. See Docket Entries Nos. 5 and 6.